IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDDIE RELIFORD, | |
| Plaintiff, | Case No. 10 C 3555 |
| v. | Hon. Harry D. Leinenweber |
| DR. GHOSH, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

Plaintiff Eddie Reliford ("Plaintiff") has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants violated his constitutional rights by being deliberately indifferent to a serious medical condition. More specifically, the Plaintiff alleges that in August 2009, he hurt his ankle on the yard at Stateville Correctional Center (hereinafter, "Stateville"), and received inadequate or delayed medical care from Defendants.

Presently before the Court are Motions for Summary Judgment filed by Correctional Medical Technician Joe Sheehy and Correctional Officer Downs [Dkt. 66, as amended by Dkt. 80, Exhibit 1] and Defendants Ghosh, Halloran, and Karraker [Dkt. 84]. For the reasons stated herein, the Motions are granted.

I. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is

entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

However, Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir.

2010), *quoting Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

## A.  Local Rule 56.1 (N.D. Ill.)

The Defendants filed Statements of Uncontested Material Facts pursuant to Local Rule 56.1 (N.D. Ill.).  Together with their Motions for Summary Judgment, the Defendants included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" [Dkts. 68, 75], as required by Local Rule 56.2.  That notice clearly explained the requirements of the Local Rules and warned the Plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted.  *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3)  a concise response to the movant's statement that shall contain
>
> > (A)  a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
> >
> > (B)  a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may rigorously enforce compliance with Local Rule 56.1.  *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th

- 3 -

Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings") (citing *Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have . . . repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

Despite the admonitions stated above, the Plaintiff failed to file a proper response to the Defendants' Statements of Uncontested Facts. In his opposing briefs, while Plaintiff disputes some of the Defendants' contentions, he cites to no specific evidence in the record that supports his claims. A Motion for Summary Judgment "requires the responding party to come forward with the evidence that it has - it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009) (citations omitted). The Plaintiff's Statements of Fact are not supported by the record. *Dent v. Bestfoods,* (Case No. 02 C 7922) 2003 WL 22025008, at *1 n.1 (N.D. Ill. August 27, 2003) (St. Eve, J.); *Malec v. Sanford*, 191

F.R.D. 581, 585 (N.D. Ill. 2000). Consequently, the Plaintiff's responses to the Defendants' proposed undisputed facts are not in compliance with Rule 56.1(b)(3)(A). Accordingly, the Defendants' proposed undisputed facts are deemed admitted. *See Chelios v. Heavener*, 520 F.3d 678, 687 (7th Cir. 2008); L.R. 56.1(b)(3)(B).

Because the Plaintiff is proceeding *pro se*, the Court will grant him considerable leeway and take into account the factual assertions he makes in his summary judgment materials. However, the Court will entertain the Plaintiff's factual statements only insofar as he could properly testify about the matters asserted. *See* FED. R. EVID. 602. The Court notes, in any event, that the sequence of events set forth in this opinion is gleaned largely from the Plaintiff's own deposition testimony and the submitted medical records.

Given the considerations stated above, the Court views the Defendants' Rule 56.1 Statements supported by the record and not properly rebutted by the Plaintiff to be true and uncontested. In order to meet its obligation to view the record in the light most favorable to the non-movant, the Court has supplemented the Defendants' Statement of Facts with additional facts the Plaintiff asserted during his deposition and in his opposing brief:

## II. FACTS AND BACKGROUND

The Plaintiff, Eddie Reliford, is incarcerated in the Illinois Department of Corrections and currently housed at Stateville Correctional Center. The Plaintiff alleges that the Defendants were deliberately indifferent to a serious medical condition when he

- 5 -

suffered a sprained ankle in August of 2009. (See Plaintiff's
Complaint.)  Dr. Partha Ghosh was the Medical Director at Stateville
Correctional Center. (*Id.*)    Alan Karraker was the Regional
Administrator for Wexford Health Sources, Inc. at the time of the
events giving rise to the complaint. (*Id.* at p. 3.)  Kevin Halloran
is the Chairman of Wexford Health Sources, Inc. (See Affidavit of
Joseph Ebbitt, ¶ 5.)   Joseph Sheehy, is a Correctional Medical
Technician ("CMT") at Stateville Correctional Center ("Stateville")
and held that position during the time in question. (*See*
Declaration of Joseph Sheehy, ¶¶ 1 and 2.)   Charles Downs is a
Correctional Officer at Stateville. (See Plaintiff's Complaint, p.
2).

Sheehy examined the Plaintiff's ankle on August 13, 2012, the
date of his injury, and his evaluation was that the Plaintiff had
suffered a sprained ankle. (*See* Plaintiff's Complaint and Defendants
Sheehy and Downs' Exhibit D, Bates Stamp No. 00003).   Sheehy
instructed the Plaintiff to keep the ankle elevated, prescribed ice
for 24 hours, referred the Plaintiff to Dr. Zhang, and provided him
with a crutch.  (*Id.*)  Sheehy also provided the Plaintiff with a
prescription for Motrin for 10 days for relief of pain.  (*See*
Defendants Sheehy and Downs' Group Exhibit D, Bates Stamp Nos. 00003,
00004).

The Plaintiff was scheduled for an x-ray of his ankle by Dr.
Zhang on August 13, 2009. (*Id.* at Bates Stamp No. 00006).  The x-ray
was taken on August 19, 2009, and showed no new pathology, some

- 6 -

slight degenerative joint disease ("DJD"), and an "old unreunited fracture at the tip of the medial malleolus." (*Id.*)

With respect to Downs, the Plaintiff testified at his deposition that Downs was present on August 13, 2009, when CMT Sheehy examined his ankle, and spoke with Sheehy about the Plaintiff's injury and the care that was rendered. (*See* Plaintiff's Deposition, p. 18.) Downs was aware that Sheehy had prescribed pain medication for the Plaintiff. (*Id.* and *see* Plaintiff's Complaint, p. 8). In his deposition, the Plaintiff testified that the following day, he asked Defendant Downs to see a med-tech or a doctor because his ankle was swollen and he was suffering from severe pain. (*See* Plaintiff's Deposition, pp. 10-11 and Plaintiff's Affidavit.)

Defendant Downs told him he had already received care, including pain medication. (*Id.*) Defendant Downs additionally spoke to Lieutenant Bishop and told her that he had spoken to the med-tech, and the med-tech told Downs that the Plaintiff did not need further treatment. (*See* Defendant Sheehy and Downs' Uncontested Statement of Fact 18)

On August 20, 2009, the Plaintiff was examined by Physician's Assistant Latonya Williams. (*Id.* at Bates Stamp No. 00007). Ms. Williams' assessment reconfirmed the prior finding that the Plaintiff had suffered a sprained ankle. (*Id*). Ms. Williams prescribed crutches, heat, a lay-in for two weeks, ibuprofen, and an ankle support. (*Id*). Physician's Assistant Williams' assessment of the

Plaintiff's injury was essentially the same as that of Defendant Sheehy, *i.e.*, a sprained ankle. (*Id*).

The Plaintiff's only claim against Dr. Ghosh is a delay in approving a prescribed ankle brace, and that the Plaintiff did not receive any brace until February 2010. (*See* Plaintiff's Complaint and Plaintiff's Deposition, p. 20.)  The Plaintiff was seen at UIC hospital on November 6, 2009, and an ankle brace was recommended. (*See* Plaintiff's Complaint, and see Defendants' Ghosh, Halloran, and Karraker's Group Exhibit D, p. 5.)

When the Plaintiff was seen at UIC on November 6, 2009, Dr. League, a UIC physician, wrote in his report:  "Left ankle sprain discussed with patient the need for immobilization via an ankle brace.  We have recommended that the patient continue to use this in his lace-up orthotic type shoe with daily activities as well as with any physical activity. (*Id.*)  On December 30, 2009 Plaintiff reported to LaTonya Williams that he had not received the brace ordered by UIC.  (*Id.*)  LaTonya Williams ordered a brace for Plaintiff that same day. (*Id.* at p. 9)

On March 15, 2010, Dr. Ghosh saw the Plaintiff because he was complaining of pain in his left ankle. (*Id.* at pp. 10-11)   On March 15, 2010, Dr. Ghosh placed another order for an ankle brace for the Plaintiff. (*Id.*)  On March 22, 2010, Dr. Ghosh saw the Plaintiff again, because his ankle brace was too big.  Dr. Ghosh ordered another, smaller brace for the Plaintiff. (*Id.* at pp. 12-13.)  From the evidence supplied by both the Plaintiff and the Defendants in

- 8 -

support of their motions and responses, it appears that the Plaintiff received medical care for his sprained ankle on August 13, 2009, August 19, 2009, August 20, 2009, November 6, 2009, December 30, 2009, March 15, 2010, and March 22, 2010, both within the prison and at an outside healthcare facility. (*See* Defendants' group exhibits, prescription orders for the applicable dates.) The Plaintiff states in his affidavit that he was required to participate in physical therapy as a result of his injury until sometime in 2011. (*See* Plaintiff's Affidavit, ¶ 14.)

The Plaintiff's claim against Defendant Kevin Halloran, the Chairman of Wexford Health Sources, Inc., is that he sent him letters and Halloran did not respond. (*See* Plaintiff's Deposition, p 21.) The Plaintiff concedes he does not know if Mr. Halloran ever received those letters. (*Id.*) The Plaintiff also concedes he does not know if Mr. Halloran has any medical training. (*Id.*) Halloran's position does not involve the responsibility for making or implementing medical policies or procedures, which are made by the Chief Medical Officer of the facility. (*See* Affidavit of Joseph Ebbitt, ¶ 5.) Halloran is not involved in the delivery of medical care to any of the sites serviced by Wexford. (*Id.* at 6 and 7.)

The Plaintiff's claim against Alan Karraker, the Regional Administrator for Wexford, is also that he sent him letters and Mr. Karraker did not respond. (*See* Plaintiff's Deposition, p. 22.) Again, the Plaintiff concedes he does not know if Mr. Karraker ever received those letters. (*Id.*) Karraker is not involved in the

medical care provided at the sites he supervises. Karraker does not have any medical training. (*See* Affidavit of Joseph Ebbitt, ¶ 9.) Any correspondence received by Wexford Health Sources, Inc., regarding medical care from patients is directed to the attention of the Manager of Risk Management regardless of to whom it is addressed. (*Id.* at ¶ 3.)

### III.  ANALYSIS

The courts have recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *See Gonzalez v. Feinerman,* 663 F.3d 311, 313-314 (7th Cir. 2011), *citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994). A prison official violates the Eighth Amendment only when: (1) the Plaintiff establishes an objectively serious injury or medical need; and (2) that Defendants knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). Deliberate indifference encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of malpractice or "negligence in diagnosing or treating a medical condition." *Norfleet v. Webster,* 439 F.3d 392, 396 (7th Cir. 2006), *citing Estelle*, 429 U.S. at 106. *See also Jones v. Simek*, 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996). An official is deliberately indifferent when he acts or fails

- 10 -

to act "despite his knowledge of a substantial risk of serious harm" to the inmate. *Farmer*, at 842.

A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain. *Estelle*, at 104-05; *Gayton v. McCoy*, 593 F.3d 610, 619 (7th Cir. 2010); *Edwards v. Snyder*, 478 F.3d 827, 832 (7th Cir. 2007). However, an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. *See Gomez v. Snyder*, Case No. 03 C 2084, 2008 U.S. Dist. LEXIS 75775, *32 (C.D. Ill., Sept. 30, 2008) (McCuskey, J.), *citing Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996). Additionally, delay is not a factor that is either always, or never, significant. Instead, the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *citing Grieveson v. Anderson*, 538 F.3d 763, 778-80 (7th Cir. 2008). In light of these governing standards, the Court finds as a matter of law that none of the five remaining Defendants was deliberately indifferent to the Plaintiff's serious medical needs.

## A.  Defendant Sheehy

An objectively serious medical condition, for purposes of determining deliberate indifference is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that

- 11 -

even a lay person would easily recognize the necessity for a doctor's attention." *Chapman*, at 845 (7th Cir. 2001); *citing Zentmyer v. Kendall County*, 220 F. 3d 805, 810 (7th Cir. 2000); *quoting Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Accordingly, the Plaintiff has satisfied the objective component of the test for deliberate indifference.

However, the Plaintiff cannot satisfy the test for subjective component of deliberate indifference. On August 13, 2009, the Plaintiff injured his ankle at Stateville. The uncontroverted evidence shows that Defendant Sheehy, the Correctional Medical Technician, treated the Plaintiff on the same day he injured his ankle, evaluating the injury and diagnosing it as a sprained ankle. He then implemented a treatment plan approved by a doctor, Dr. Zhang, that included ice, keeping the ankle elevated, Motrin for pain, a crutch to assist the Plaintiff with mobility and to keep weight off of the injured ankle. Defendant Sheehy also scheduled the Plaintiff for an x-ray, per Dr. Zhang's treatment plan.

The Plaintiff asserts, but provides no evidence, that Defendant Sheehy told him to put pressure on the injured ankle. It is the Plaintiff's contention that this mistake in treatment resulted in making the injury worse and in his suffering additional pain. (See Plaintiff's response.) However, neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th

Cir. 2010); *see also Estelle*, 429 U.S. at 106; *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Additionally, a party cannot defeat summary judgment by relying on unsubstantiated facts or by merely resting on its pleadings. *See Hemsworth, II v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001). Instead, the party that bears the burden of proof on an issue must affirmatively demonstrate with admissible evidence that a genuine issue of material fact exists that requires a trial. *See Hemsworth*, 476 F.3d at 490. Further, statements in a motion or brief are not evidence and are not entitled to any evidentiary weight. *See, e.g., Topi v. Mukasey,* 264 Fed.Appx. 504, 506 (7th Cir. 2008); *Wilson v. Hosey*, No. 09 C 7777, 2012 WL 957488, *7 (N.D. Ill. Mar. 15, 2012) (Norgle, J.) (citations omitted). While the Plaintiff pled that Sheehy acted with deliberate indifference, he provides no evidence to support such a claim. Accordingly, the Court grants the Motion for Summary Judgment as to Defendant Sheehy.

## B. Defendant Downs

With respect to Defendant Downs, the record establishes that he was present when Defendant Sheehy examined the Plaintiff on August 13, 2009. Defendant Downs spoke to Sheehy during or after treatment and was aware of the treatment plan put in place by Defendant Sheehy, including the fact that the Plaintiff was prescribed pain medication.

The next day, the Plaintiff notified Defendant Downs that his ankle was swollen and that he was in severe pain. Allegedly, Defendant Downs refused to call a med-tech or to send the Plaintiff to the health care unit because he had already received care. When the Plaintiff talked to Lieutenant Bishop, Defendant Downs intervened and told her the Plaintiff did not need any medication because he had already been treated and did not require additional care.

According to the record, the Plaintiff had received care including pain medication on August 13, 2009. The Plaintiff had an x-ray of his ankle on August 19, 2009, and saw Physician's Assistant Williams on August 20, 2009. The Plaintiff has provided no evidence that any delay that might have been caused by Defendant Downs in preventing him from seeing medical personnel on August 14, 2009, resulted in any detrimental effect, as required for liability to attach under 42 U.S.C. § 1983. *See Gomez v. Snyder*, Case No. 03 C 2084, 2008 U.S. Dist. LEXIS 75775, *32 (C.D. Ill., September 30, 2008) (McCuskey, J.); *citing Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996).

Additionally, the evidence reflects that Defendant Downs was aware of the care the Plaintiff received the day prior and it is an uncontroverted fact that Downs was told by the med-tech on August 14, 2009, that the Plaintiff did not require additional pain medication. As (1) Defendant Downs was aware of the care provided to the Plaintiff on August 13, 2009, (2) he relied on the med-tech's judgment that the Plaintiff did not require additional care on August

- 14 -

14, 2009, (3) the Plaintiff received additional care on August 19, 2009, and August 20, 2009, and (4) there is no evidence in the record that any delay in care that may have been caused by Defendant Downs, he is entitled to judgment as a matter of law.

## C. Defendant Ghosh

The crux of the Plaintiff's claim against Defendant Ghosh is that he delayed approval of the Plaintiff's ankle brace. A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain. *Estelle*, 429 U.S. at 104-05; *Gayton v. McCoy*, 593 F.3d 610, 619 (7th Cir. 2010); *Edwards v. Snyder*, 478 F.3d 827, 832 (7th Cir. 2007). While the record reflects that the Plaintiff was seeing medical personnel starting the day of the injury, and that treatment was being prescribed, the record is not clear about when the Plaintiff received the ankle brace that was prescribed to immobilize the ankle.

In examining prisoner claims of deliberate indifference, the Court considers the totality of the inmate's care. *See Arnett v. Webster,* 658 F.3d 742, 753 (7th Cir 2011), *citing Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997). The totality of care the Plaintiff received after injuring his ankle indicates that the Defendants, including Defendant Ghosh, provided him with constitutionally adequate health care. The record indicates some delay in the Plaintiff's receiving his prescribed ankle brace, however, it also reflects multiple visits with health care providers

- 15 -

both at Stateville and a referral to a specialist. While the delay might amount to negligence or medical malpractice, neither is enough to establish deliberate indifference. *See Norfleet* at 396. Additionally, the Plaintiff has provided no evidence that any delay in receipt of the ankle brace had any detrimental effect regarding the treatment of his injury. *See Gomez, supra.*

The record indicates that the Plaintiff was seen multiple times the week of the injury. It further reflects that he was sent to an orthopedic specialist for treatment at UIC on November 6, 2009. After seeing the specialist, the Plaintiff was seen on December 30, 2009, March 15, 2010, and March 22, 2010, and he was prescribed physical therapy until 2011, two years after his injury. Accordingly, based on the evidence in the record of the abundance of care the Plaintiff received for a sprained ankle, no reasonable jury could determine that Defendant Ghosh provided him with constitutionally inadequate medical care. Accordingly, the Defendants' Motion is granted as to Defendant Ghosh.

### D. Defendants Halloran and Karraker

The Plaintiff alleges that he sent multiple letters to Defendants Halloran and Karraker, executives at Wexford Health Source, Inc. The record indicates that at Wexford, when a letter arrives complaining about quality of medical care, regardless of whom it is addressed to, it is diverted to Joseph Ebbitt, the Manager of Risk Management. The record contains no evidence that Defendants Halloran and Karraker received or read the Plaintiff's letters of

complaint. Finally, the record indicates that medical policy and procedures are made by the Chief Medical Officer of the facility involved, in this case Dr. Ghosh at Stateville. As such, Halloran and Karraker are entitled to judgment.

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." Pepper v. Village of Oak Park, 430 F.3d 805, 809-810 (7th Cir. 2005). In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for §1983 recovery. *Hildebrandt v. Illinois Dep't of Natural Resources, et al.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Plaintiff has established no such causal connection. There is no evidence in the record, beyond the Plaintiff's unsupported argument, that Defendants Halloran and Karraker are responsible because he sent them letters of complaint. Accordingly, Defendants Halloran and Karraker are granted summary judgment.

### E. Official Capacity Claims

In denying the Defendants' Motion to Dismiss on August 19, 2011, the Court allowed the Plaintiff to pursue an official capacity claim against Defendants Ghosh, Halloran, and Karraker pursuant to *Monell v. Dep't. of Soc. Serv. of City of New York*, 436 U.S. 658 (1978) for an alleged custom and policy of delaying treatment to inmates at Stateville. As Plaintiff has failed to establish deliberate

- 17 -

indifference as to the Defendants individually, and his *Monell* claim is entirely dependent upon the underlying claim, it is dismissed, as well. *See Houskins v. Sheahan*, 549 F.3d 480, 493 -494 (7th Cir. 2008), *citing King v. East St. Louis School Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007) ("It is well established that there can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of [a plaintiff's] constitutional rights"); *see also Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003) ("a municipality cannot be found liable if there is no finding that the individual officer is liable on the underlying substantive claim"), *citing City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (*per curiam*). The Plaintiff cannot prevail on his official capacity claim, as he has no actionable claim against the Defendants on his underlying individual claims of deliberate indifference.

## IV. CONCLUSION

For the reasons stated herein, the Defendants' Motions for Summary Judgment [Dkt. 66 (as amended by 80) and 84] are granted and this case is dismissed.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 6/27/2012

- 18 -